IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CALVERT HEALTH, LLC,              )
                                  )
    Plaintiff,                    )
                                  )    NO. 3:23-cv-00110
v.                                )    JUDGE RICHARDSON
                                  )
FOUR LEAF LIQUIDATORS, LLC,       )
                                  )
    Defendant.                    )
                                  )
                                  )

## MEMORANDUM OPINION

On May 15, 2023, Plaintiff Calvert Health, LLC filed "Plaintiff's Fed. Civ. R. 55(b)(2) Motion for Default Judgment" (Doc. No. 17, "Motion"), wherein Plaintiff seeks default judgment against Defendant Four Leaf Liquidators, LLC. To the extent that Defendant is deemed to have appeared in this case, it did so only via a letter sent to the Court by Defendant's owner Mike Langenfeld notifying the Court that he was attempting to retain counsel. (Doc. No. 20). That letter was received by the Court on June 22, 2023. No counsel has made an appearance on Defendant's behalf, and Defendant has failed to plead or otherwise defend this action including the present Motion. The Clerk entered default against Defendant on May 1, 2023, pursuant to Fed. R. Civ. P. 55(a). (Doc. No. 15). For the reasons discussed below, the Motion will be GRANTED in part and DENIED in part.

Plaintiff has since filed an unopposed motion to ascertain the status of the Motion for Default Judgment (Doc. No. 22), which will be DENIED as moot in light of the information provided in this opinion.[1]

**BACKGROUND**[2]

This case revolves around Defendant breaking a contract that permitted limited use of Plaintiff's trademarks and usurping Plaintiff's brand. Plaintiff conducts business as "Caliber Care+Transport" in Tennessee, Kentucky, and Florida, providing transportation services to and for patients, caretakers, and related facilities. Plaintiff owns two trademarks registered with the United States Patent and Trademark Office ("USPTO"), as well as several trademarks that are not federally registered but which Plaintiff claims ownership under state common law.[3] (The Court herein adopts the language used in Plaintiff's complaint that refers to these unregistered marks as "common-law marks"). The first trademark is Registration No. 5802653 (USPTO Registration Number 5802653) for the trademark CARE+TRANSPORT (the "Care+Transport Mark") for

---

[1] The Court realizes that the provision of information in this Order alternatively could be deemed, in the Court's discretion, to have effectuated a grant of the motion to ascertain status.

[2] The facts stated here are largely taken from the Complaint. Upon entry of default, a complaint's well-pleaded factual allegations pertaining to liability are taken as true. *See Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (holding that entry of default judgment "conclusively establishes every factual predicate of a claim for relief"); *In re Family Resorts of Am., Inc.*, No. 19-cv-4127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992); *Reid v. Herrera Harvesting LLC*, No. 2:17-cv-229, 2020 WL 2473491, at *1 (E.D. Tenn. May 13, 2020); *Long v. Morgan*, Nos. 2:17-cv-00072, 2:17-cv-00073, and 2:17-cv-00074, 451 F. Supp. 3d 830, 832 (M.D. Tenn. Mar. 30, 2020). The facts stated here relate to liability and as discussed below, are (subject to the following sentence) "well pleaded" for purposes of this principle and thus are accepted as true for purposes of adjudicating the Motion. Notably, however, where facts stated herein are *qualified* (as for example by "Plaintiff alleges"), they are not accepted as true for one or more reasons (as, for example, that they encompass a verbal characterization that is too subjective to be treated as a "fact" in any event).

[3] Consistent with Plaintiff's use of the term, "trademarks" is being used herein to refer to both trademarks and service marks. The Court takes judicial notice that each of the two registered trademarks discussed here—Care+Transport Mark and the Caliber Mark—is listed by USPTO as a service mark.

medical transport services, International Class ("IC")[4] 039. The second trademark is Registration No. 4980710 for the trademark CALIBER PATIENT CARE (the "Caliber Mark") for two ICs: IC 039, medical transport services and passenger transport; and IC 044, emergency medical response services and emergency medical services.[5] Plaintiff has also filed applications for registration with the USPTO for the Caliber design (Serial No. 97781202) (Figure 1 below) and the Caliber chevron design (Serial No. 97781187) (Figure 2 below), and as of the time of filings its Complaint was awaiting review of both applications by a trademark examiner with the U.S. Patent and Trademark Office. The common-law marks CALIBER,[6] the Caliber design, CALIBER CARE+TRANSPORT, the Caliber Care+Transport designs (Figures 3 and 4 below), and the Caliber chevron design (collectively, the "Common-Law Marks"), along with the Care+Transport Mark and the Caliber Mark together will hereinafter be referred to as "Plaintiff's Marks."


Figure 1


Figure 2


Figure 3


Figure 4

In connection with its business of providing medical transport services,[7] Plaintiff has used, in commerce throughout the United States continuously: the Care+Transport Mark since at least

---

[4] ICs are general categories of goods and services published by the World Intellectual Property Organization and used to classify trademarks and their use.

[5] The Caliber Mark was canceled on the USPTO Principal Register on January 6, 2023, for failure to file a so-called Section 8 declaration (required to renew federal registration), but Plaintiff has filed a petition to reinstate the Caliber Mark.

[6] Where a mark is set forth in this opinion (and the accompanying order) in capital letters, that indicates that the mark consists solely of the capitalized word(s), without any additional characteristics that would serve to narrow the scope of the mark.

[7] The Complaint describes this business as including "the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of medical transport services, including but not limited to wheelchair, stretcher, and ambulatory services, passenger transport, dedicated facility transports, and long-distance trips by ground and air."

January 22, 2015; the Caliber Mark since at least October 1, 2014; and the Common-Law Marks since at least 2016.

Plaintiff alleges that Plaintiff's Marks are distinctive in the view of both the consuming public and Plaintiff's trade. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the goods and services sold under Plaintiff's Marks including through its internet website https://www.caliberpatientcare.com ("Plaintiff's Website"), social media such as Facebook, Google ad services, so-called rolling billboards (i.e., custom graphics affixed to each of Plaintiff's transport vehicles in its fleet), and in-office advertising materials. Each year since 2018, Plaintiff has spent approximately thirty-three thousand dollars on the marketing, advertising, and promotion of the goods and services sold under Plaintiff's Marks via Facebook and Google advertising services. Plaintiff's Website generates approximately thirty thousand page views annually. From January 2018 through December 2022, Plaintiff's transportation business has earned approximately fourteen million dollars in revenue under Plaintiff's Marks. Plaintiff represents that the goods and services under Plaintiff's Marks are of high quality as evidenced by Plaintiff's professional website and physical offices, and its business is sophisticated as evidenced by its current business registration with the Secretary of State in both Tennessee and Kansas as well as its federally registered trademarks, its growing customer base, and overwhelmingly positive customer testimonials found online. Plaintiff alleges that as a result of Plaintiff's expenditures and efforts, Plaintiff's Marks have come to signify the high quality of the goods and services designated by Plaintiff's Marks and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.[8] Plaintiff's Marks, and the goods and

---

[8] The phrase "goods and services" is used by Plaintiff, and the Court uses it herein. However, the Court notes that it appears Plaintiff's Marks were used in connection with only *services* (and not goods). (The

services offered thereunder, have received what Plaintiff categorizes as significant unsolicited coverage in various media.

Plaintiff has enforced and protected Plaintiff's Marks against past infringements involving third parties besides Defendant. One such example involved Plaintiff sending a cease-and-desist letter to a direct competitor in Nashville, who promptly removed its infringing marks; another involved sending a cease-and-desist letter to one of Plaintiff's former franchisees in St. Louis, Missouri.

Defendant is engaged in the same or substantially similar business as Plaintiff, i.e., providing transport services to and for patients, caretakers, and care facilities. Plaintiff and Defendant began business interactions in or around January 2020. They entered into a Purchase Agreement, whereby Defendant would purchase from Plaintiff the right to operate Plaintiff's transportation business, including its fleet of vehicles, in Austin, Texas. The Purchase Agreement explicitly excluded (from the purchase and assignment to Defendant) Plaintiff's Marks; Plaintiff retained all rights to its intellectual properties. Defendant was required to discontinue use of Plaintiff's Marks within ten (10) days of full execution of the Purchase Agreement.[9] Nevertheless, Plaintiff and Defendant subsequently made an oral agreement whereby Plaintiff granted Defendant a license to use Plaintiff's Marks at a rate of $2.90 per trip[10] taken by Defendant in the operation

_____

Court's adoption of this broader phrase aligns with the Court's adoption of Plaintiff's use of "trademarks" to cover service marks, as discussed in a footnote above).

[9] The Court foregoes addressing any complications from the possible implication here that Defendant (allegedly being required to "discontinue" use) had been using Plaintiff's Marks even *prior* to doing business with Plaintiff, because Defendant has not made any argument based on prior use (or, for that matter, any argument at all) and because the requirement to discontinue use within ten days of executing the Purchase Agreement, standing alone, does not change any of the discussion in this opinion.

[10] A "trip" was understood by Plaintiff and Defendant to be: (i) travel to a customer location by a Mark(s)-adorned vehicle of Defendant, (ii) picking up the customer in such vehicle, (iii) travel to the customer's desired drop-off point, and (iv) dropping off the customer at such drop-off point.

of Defendant's transportation business, with licensing fees to be paid to Plaintiff on a monthly basis (the "License").[11] Use of Plaintiff's Marks under the License was restricted to displaying Plaintiff's Marks on Defendant's transportation vehicles.

Defendant lawfully operated under the License and paid licensing fees from April 2020 until around April 2022, but thereafter ceased paying the licensing fees while continuing its use of Plaintiff's Marks in the operation of its business. Despite Plaintiff's requests for payment and objection to the continued use, Defendant continues to use Plaintiff's Marks to date.[12]

Plaintiff requested multiple times orally and in writing for Defendant to pay its License invoices or, in the alternative, cease use of Plaintiff's Marks. On August 31, 2022, Plaintiff sent to Defendant its first cease-and-desist letter (Doc. No. 1-12 at 2-3) objecting to Defendant's use of Plaintiff's Marks and confusingly similar marks (identified and described further below as the "Infringing Marks"). Plaintiff thereafter hired counsel, who on December 1, 2022, sent a second cease-and-desist letter to Defendant. Neither cease-and-desist letter occasioned a response.

On October 6, 2022, after receiving multiple requests from Plaintiff to pay the licensing fees and to cease and desist using Plaintiff's Marks, Defendant informed Plaintiff that Plaintiff would have to sue Defendant to force Defendant to pay the overdue licensing fees and to stop using Plaintiff's Marks. Plaintiff has provided an affidavit from Plaintiff's owner (Kyle Calvert) attesting to this conversation with Defendant (in particular, with Defendant's owner, Mike Langenfeld). Furthermore, in an email between Calvert and Langenfeld dated October 6, 2022

---

[11] Plaintiff has provided an April 2022 invoice to Defendant showing the per-trip License fee as support for these allegations (which would have been taken as true even absent such support).

[12] The Court takes judicial notice that Defendant's alleged website, discussed further below, demonstrates Defendant's continued use of Plaintiff's Marks at the time of the Court's completion of this memorandum opinion.

(Doc. No. 1-15) Calvert asked, "When can we expect compliance with our cease and desist, delivered 8/31?", to which Langenfeld replied, "When the judge makes their ruling."[13] (Doc. No. 1-15 at 2).

In December 2022, Plaintiff received from the Texas Workforce Commission two wage claims regarding unpaid wages to two of Defendant's employees, James Griffin and Jana Kiser) (the "Wage Claims"). Plaintiff spoke to Griffin after receiving his wage complaint, and Griffin explained that he thought Plaintiff was his employer after seeing Plaintiff's Marks on Defendant's vans. Kiser mistakenly sent her wage complaint to Plaintiff for the same reason. Thus, since in or around April 2022, Defendant adopted and began using (i) a mark identical to Plaintiff's Care+Transport Mark; and (ii) a mark confusingly similar[14] to Plaintiff's Caliber Mark and Common-Law Marks because it incorporates (a) the word "Caliber" from the Caliber Mark and Plaintiff's common law CALIBER word mark, (b) the entirety of Plaintiff's common-law Caliber design, (c) the words "Caliber" and "Care" from Plaintiff's Caliber Mark and Plaintiff's common-law CALIBER CARE+TRANSPORT word mark, (d) substantial and significant portions of Plaintiff's common-law Caliber Care+Transport designs, and (e) the entirety of Plaintiff's common-law Caliber chevron design. These two marks together will hereinafter be referred to as the "Infringing Marks."[15]

---

[13] It appears that the time contemplated by Langenfeld has arrived; surely, the undersigned judge is herein making the ruling that Langenfeld had in mind.

[14] "Confusingly similar" is a legal term but the Court nevertheless accepts this allegation as true since it is reasonably inferable from other factual allegations in the Complaint that are accepted as true.

[15] Plaintiff coined this term, and the Court adopts it in the facts presented here because, as discussed below, the Court finds that Defendant's use was in fact infringing on the Marks.

The Infringing Marks are often used together as "Caliber Care+Transport" (the "Combined Infringing Mark"). Plaintiff claims that the Combined Infringing Mark is confusingly similar to Plaintiff's Marks because it is identical to Plaintiff's trade name and common-law word mark CALIBER CARE+TRANSPORT. The Court additionally notes that the Combined Infringing Mark includes the (registered) Care+Transport Mark.

Defendant has been engaged in the same business as is Plaintiff while using the Infringing Marks and Combined Infringing Mark in Texas and Ohio, via an interactive internet business website, and via hiring websites. Defendant has used the Infringing Marks and Combined Infringing Mark, as reflected by attachments to the Complaint, including images from a website owned and operated by Defendant ("Defendant's Alleged Website") and photographs taken by Dallas, Texas highway toll cameras. (Doc. No. 1-17). Defendant's Alleged Website directs visitors to Plaintiff's Website. Defendant's business conducted under the Infringing Marks and Combined Infringing Mark is the same or substantially similar to Plaintiff's; uses the same channels as Plaintiff's business;[16] and is directed to the same consumers as is Plaintiff's business.[17]

Plaintiff asserts that Defendant's use of the Infringing Marks and Combined Infringing Mark is misleading; Defendant is willfully and deliberately using the goodwill of Plaintiff's Marks to Defendant's own advantage; Defendant's goods and services offered under the Infringing Marks and Combined Infringing Mark are of low quality and dilute, tarnish, and blur the Plaintiff's Marks

---

[16] These channels include Defendant's Alleged Website (which redirects visitors to Plaintiff's business website), a phone number, email, signage affixed to transport vehicles, and its offices in Texas and Ohio. Plaintiff, on its own, and through its licensees and authorized distributors, distributes, provides, and sells the goods and services under Plaintiff's Marks via trade channels including Plaintiff's Website, a phone number, email, and its offices in Tennessee, Kentucky, and Florida.

[17] These consumers include medical patients, the elderly, medical and elderly caretakers, as well as related businesses and facilities that employ or contract such caretakers, workers, skilled nursing homes, long term care patents and facilities, memory care patients and facilities, hospitals, and health systems.

and Plaintiff's associated goodwill; and Defendant's infringing acts have caused and are likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's identical or substantially similar goods and services and have and are likely to continue to deceive the relevant consuming public, especially the elderly consumers Defendant markets to, into believing, mistakenly, that Defendant's goods and services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff. To support this, Plaintiff presented representative customer testimonials found online (Doc. No. 1-18), which Plaintiff characterizes as "overwhelmingly negative," and the two Wage Claims (Doc. No. 1-16) served on Plaintiff by Defendant's employees (who mistakenly believed Plaintiff was their employer) for failure to pay wages to its employees.

On February 6, 2023, Plaintiff commenced this action by filing its Complaint, which seeks both monetary and injunctive relief. The Summons and Verified Complaint were served on Defendant on February 7, 2023. (Doc. No. 6). On May 1, 2023, the Clerk of Court issued an Entry of Default against Defendant pursuant to Fed. R. Civ. P. 55(a). (Doc No. 15). Defendant has not responded to the Complaint or this Motion.

## LEGAL STANDARD

In order to obtain a default judgment under Federal Rule of Civil Procedure 55, the plaintiff must have first secured an entry of default from the Clerk of Court, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R. Civ. P. 55(a). Upon entry of default, if the plaintiff's claim is not for a sum certain, he or she "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2). Following an entry of default, as noted in footnote 1 above, the complaint's well-pleaded allegations pertaining to liability are taken as true. However, the default is not considered an admission of

damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved."). A default judgment may be entered without a hearing unless it is necessary to determine the amount of monetary damages. *Id.* The court must exercise "sound judicial discretion" when determining whether to enter a default judgment. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2685 (3d ed. 1988); *see also Applebaum v. Target Corp.*, No. 11-cv-15035, 2015 WL 13050014, at *1 (E.D. Mich. Sept. 10, 2015).

## ANALYSIS

### A. Liability

Plaintiff has set forth seven counts: federal trademark infringement pursuant to 15 U.S.C. §1114(1) (Count I), federal unfair competition pursuant to 15 U.S.C. §1125(a) (Count II), federal trademark dilution pursuant to 15 U.S.C. §1125(c) (Count III), state breach of contract (Count IV), state trademark dilution (Count V), common-law trademark infringement (Count VI), and common-law unfair competition (Count VII).

Given the entry of default, the Court will accept as true those allegations in the Complaint asserting liability that are "well-pleaded." Not all allegations of liability are well-pleaded and sufficient to support a default judgment. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020). To be "well-pleaded," allegations must at least satisfy "Rule 8(a) of the Federal Rules of Civil Procedure[, which] sets forth the basic federal pleading requirement that a complaint 'shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Dalmayer v. Michigan*, No. 08-12784, 2009 WL 1378322, at *2 (E.D. Mich. May 14, 2009).

In the present case, the Court concludes that with respect to liability, the claims set forth in Count I, Count II, Count IV, Count VI, and Count VII[18] are well pleaded in that they satisfy Rule 8(a). Among other things, based on the factual matter alleged in support of these claims, these claims comply with the pleading standards set forth in the bellwether cases of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).[19] The Court therefore accepts that those allegations are true and establish Defendant's liability on each claim.

That leaves Counts III and V, which are for federal and state trademark dilution, respectively. These pose problems for Plaintiff.

Count III is Plaintiff's federal dilution claim. Under Section 1125(c)(4), to succeed on this claim, Plaintiff has the burden to prove that Plaintiff's Marks are "famous." While Plaintiff has

---

[18] Like the other common law claims, Plaintiff does not cite case law in support of the basis of the Count VII claim for common law unfair competition. It is worth briefly noting that there is some disagreement on what is required to plead this claim, but that disagreement is irrelevant here. Specifically, the Sixth Circuit recognized three aspects to a common law unfair competition claim that a Plaintiff must prove:

> (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization.

*Brainard v. Vassar*, 561 F. Supp. 2d 922, 936–37 (M.D. Tenn. 2008) (citing *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady,* 119 F.3d 1236, 1243 (6th Cir.1997)). While "[t]here is some conflicting authority as to the scope of the third requirement," *id.* at 937, such conflict is irrelevant here because the Wage Claims clearly demonstrate actual confusion. The first two are also easily met as well seeing as, for example, Defendant's website links to Plaintiff's website in its "About Us" section.

[19] The Complaint makes many of the allegations "on information and belief," which is not always warranted given that Plaintiff has supplied factual allegations of surrounding circumstances that suggest that Plaintiff has a basis of knowledge for such allegations that transcends mere "information and belief." Notably, unnecessary use of the qualifier "on information and belief" does not by itself make the allegation not well-pleaded. For the undersigned's view regarding allegations made "on information and belief," see *DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:22-CV-00469, 2023 WL 6542305, at *7-10 (M.D. Tenn. Oct. 6, 2023).

stated that its marks are in fact famous,[20] in this context, "famous" is a legal conclusion rather than a factual allegation that the Court necessarily must accept as true. Section 1125(c)(2) instructs that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." It then provides potential factors relevant to the "famous" determination, which include the extent of (i) "advertising and publicity of the mark[,]" (ii) "sales of goods or services offered under the mark[,]" and (iii) "actual recognition of the mark[,]" as well as (iv) whether the mark is federally registered.

Plaintiff has supported Plaintiff's Marks' claims to fame by asserting that it has put a significant amount of money into its branding, that Plaintiff's goods and services are associated with high quality and sophistication, that Plaintiff has received unsolicited media coverage, and that two of Plaintiff's Marks were registered (at least at the time the violations began). These factual allegations are insufficient to support "famous" as it is understood for a dilution claim. Plaintiff has not claimed that Plaintiff's Marks are "widely recognized by the general consuming public of the United States as a designation of" medical transportation services. 15 U.S.C. § 1125. Nor has Plaintiff provided comparable allegations such as those that would supporting a contention that Plaintiff's Marks are a "household name." *See Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016) ("Courts have interpreted the Act to require the mark to be a 'household name.'" (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012))). Nor can the Court say that "'when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner[,]'" *Id.* (quoting *Coach Servs., Inc.*, 668 F.3d at 1373), or that Plaintiff's Marks are comparably recognizable to that of other litigants, such as Audi,

<hr>

[20] The Complaint states as fact, "As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's Marks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendant alleged herein."

Starbucks, and Louis Vuitton, that succeeded in claiming they hold famous marks. *Id.* (collecting cases). "It is difficult to establish fame under the Act sufficient to show trademark dilution," and Plaintiff's Marks are simply "in a different league from the marks that have met this threshold." *Id.*[21]

Similarly, Plaintiff cannot support its state trademark dilution claim (Count V) under T.C.A. § 47-25-513(a), because "the Lanham Act 'famousness' factors substantially overlap with Tennessee's 'famousness' evaluation," and nothing about Plaintiff's allegations suggest that any of the above-mentioned considerations would change simply by limiting the scope to "in-state famousness." *See Moore v. Weinstein Co., LLC*, 545 F. App'x 405, 411 (6th Cir. 2013); *see also AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004) (noting that the Sixth Circuit has "interchangeably analyzed the Tennessee and federal antidilution statutes"); *Clever Factory, Inc. v. Kingsbridge Int'l, Inc.*, No. 3:11-1187, 2014 WL 2006777 (M.D. Tenn. May 16, 2014) (acknowledging that the federal antidilution statute provides persuasive authority given the "dearth of case law specifically directed at the Tennessee anti-dilution law") (citations omitted).

Accordingly, Plaintiff is entitled to default judgment on only its claims for federal trademark infringement pursuant to 15 U.S.C. §1114(1) (Count I), federal unfair competition pursuant to 15 U.S.C. §1125(a) (Count II), state breach of contract (Count IV), common-law trademark infringement (Count VI), and common-law unfair competition (Count VII).

---

[21] This is to say, Plaintiff's statements that its brand is recognized and famous is not well pleaded; Plaintiff has not alleged any factual matter from which a reasonable inference can be drawn that its Marks have any recognition (let alone facts sufficient to prove that its Marks are famous), nor could it be within Plaintiff's personal knowledge (at least, absent something like knowledge of survey results that could be treated as knowledge of consumer recognition reflected in those results), because consumer recognition is a matter of *consumer's*, not Plaintiff's, knowledge and understanding. Plaintiff could have an inference that its Marks are recognizable to others or data demonstrating how others recognize the Marks but that would be based on observable facts that Plaintiff has not provided in its allegations.

### B. Damages

"Where damages are unliquidated[,] a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (citation omitted). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09–CV–193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); see Fed. R. Civ. P. 55(b)(2) (A district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.")); *Vesligaj*, 331 F. App'x at 354 (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing.").

Plaintiff's Complaint says that the amount of damages should be proven at trial, and the Motion does not provide any additional detail as to damages. Plaintiff has provided a monthly invoice with a total amount paid for licensing fees that particular month, but there is no indication whether this was the amount payable in all months as to which licensing fees went unpaid. (Doc. No. 1-11). Further, as far as Plaintiff indicates in the Motion,[22] the (sole) monthly amount documented by Plaintiff would at best reflect only the amount owed for breach of contract, and it does not support Plaintiff's other damages claims. Plaintiff shall file with the court a memorandum relaying the facts and law that supports a specific amount of damages, so the Court can determine whether an evidentiary hearing would be beneficial.

---

[22] The Court recognizes the possibility that a reasonable licensing fee potentially could be a measure of damages awardable on Plaintiff's other claims, but Plaintiff has not relied on that possibility or asserted why it should be realized.

Although the Court lacks sufficient information at this time as to the appropriate figure, it will address Plaintiff's claims for kinds of relief under the Latham Act that do not require reference to the final amount of damages. Under 15 U.S.C. § 1117(a), a defendant's (i) violation "of any right of the registrant of a mark registered in the Patent and Trademark office" or (ii) commission of the acts specified in Section 1125(a)(a), entitles the plaintiff to recover the defendant's profits, plaintiff's damages, and the cost of the action, subject to the provisions of Sections 1111 and 1114. A court assessing damages may enter judgment for up to three times the amount of actual damages.[23] Additionally, in "exceptional case," the Court may also award reasonable attorney's fees. 15 U.S.C. § 1117(a).

Section 1117(b) states that in a case involving a counterfeit mark in violation of § 1114(1)(a), unless there are extenuating circumstances, "the court shall . . . enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" if the Defendant "intentionally us[ed] a mark . . . knowing such mark . . . is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." Additionally, the Court may also choose to award prejudgment interest. *Id.*

The Court will begin with the intentionality inquiry, as it is quickly disposed of. Plaintiff has put forth sufficient evidence that Defendant's violations were intentional. The existence of a contract for a license to use Plaintiff's Marks indicates that Defendant was aware that it was not otherwise entitled to use Plaintiff's Marks outside of the terms of that contract. Additionally, Langenfeld's statement that he would change his behavior "when the judge issued the ruling" indicates that he was knowingly violating the law. True, such a statement could, under different

---

[23] The statute expressly deems such an award "compensation and not a penalty." 15 U.S.C. § 1117(a). The Court declines to comment on whether it makes sense to characterize an award of treble damages as compensation only; instead, the Court applies the statute as written.

circumstances, indicate that the party believed it was entitled to take its actions and that litigation would vindicate that belief. Here, though, Defendant's failure to defend this action—despite having invited litigation—indicates that Defendant had no such belief and instead was acknowledging that the law *could* hold it responsible and only at the point that the law did, would Defendant stop its behavior.

As to the existence of "exceptional circumstances," the Supreme Court provided guidance on what constituted "exceptional circumstances" in a statute with identical language. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 134 S. Ct. 1749, 1749 (2014). And courts, including the Sixth Circuit, have applied such guidance to Section 1117 cases. *See Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019); *LHO Chi. River, L.L.C. v. Perillo*, 942 F.3d 384, 388 (7th Cir. 2019). Exceptional circumstances can include where "[t]he plaintiff [has] an unusually strong (or unusually weak) case on the merits[,]" meaning among other things that "[b]latant trademark infringement might justify an award for the plaintiff[.]" *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478 (6th Cir. 2022) (citing *Octane*, 572 U.S. at 554, 134 S. Ct. 1749), *reh'g denied,* No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022). "Or the losing party might have litigated the case in an unreasonable manner—for example, by requesting costly discovery to coerce a settlement despite the weakness of its claims." *Id. See also Octane*, 572 U.S. at 554 n.6 (considering factors like "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19, 114 S. Ct. 1023 (1994))). Ultimately, though, the question is one "for the district court to decide under the totality of the circumstances." *Id.*

The Court has little difficulty determining that this case is one presenting "exception circumstances" that justifies an award of attorney's fees. Defendant operated in bad faith by forcing Plaintiff into litigation but then not appearing to defend against Plaintiff's claims, giving Defendant "unclean litigation hands." *Max Rack*, 40 F.4th at 478–79. Defendant's goading Plaintiff into litigation, only to decline thereafter to appear in the litigation, is analogous to the abovementioned example of using costly discovery to coerce a settlement on otherwise weak claims; both force the party with the stronger case to endure unnecessary expense to pressure them into forfeiting a meritorious claim. Additionally, Defendant displayed an apparent lack of concern about Plaintiff being brought into disputes regarding—or otherwise associated with—*other alleged* violations of the law (meaning, the alleged violations underlying the Wage Claims) based on Defendant's misleading use of the Infringing Marks and Combined Infringing Mark; this represents a callous disregard of the repercussions, both legal and otherwise, of its actions.

Furthermore, Plaintiff has a strong case on its successful claims given the factual allegations and evidence attached to its Complaint, which demonstrate blatant infringement. This Court's decisions above as to liability and damages (in an amount still to be determined), and below that a permanent injunction is appropriate, are sufficient to prove that strength. *See Anthony Vince Nail Spa, Inc. v. M Vince Nail Spa, L.L.C.*, No. 3:21-CV-00366, 2021 WL 9990389, at *1 (M.D. Tenn. Dec. 9, 2021) (reasoning that a "[p]laintiff was clearly the prevailing party because it obtained judgment in its favor, an award of statutory damages, and the entry of a permanent injunction against defendants") (citing *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012)). Nevertheless, there are striking examples of the infringement in this case, including Defendant's attempt to pass itself off as Plaintiff on its (Defendant's) website by including Plaintiff's website as a link under an otherwise sparse "About Us" section of

Defendant's website.[24] *See CARSTAR Franchisor SPV LLC v. Collision Express of Ohio Inc.*, No. 2:19-CV-3282, 2020 WL 1956988, at *1 (S.D. Ohio Apr. 22, 2020) (finding that exceptional circumstances existed where the prevailing party won default judgment, the defendant did not cease its infringing activity despite being put on notice, and the defendant did not litigate the issue); *Noco Co. v. Mac Calabur Invs., LLC*, No. 1:21-CV-2173, 2022 WL 2176540, at *5 (N.D. Ohio June 16, 2022) (finding that exceptional circumstances existed where the defendant continued infringing activity despite being given actual notice and failed to respond to the plaintiff's claims of federal and state trademark law violations) (citing *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004)).

Accordingly, Plaintiff is entitled to attorney's fees and prejudgment interest. The amount of damages remains to be determined based upon the required briefing described above.

### C. Injunctive Relief

Plaintiff also requests permanent injunctive relief. To obtain such relief, a plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury;[25] (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006)). In the case of a default judgment, the court need not hold an evidentiary hearing to grant a permanent injunction, because there are no factual issues in dispute. *See Gibson Guitar*

---

[24] Although the Complaint notes that the website misdirects Defendant's customers to Plaintiff's website, the Court takes judicial notice from having visited the website directly that the link to Plaintiff's website is on the website's landing page, and visitors to Defendant's website are directed to that link when they select "About Us" from the two menu options.

[25] The undersigned is of the view that the second requirement overlaps substantially with the first requirement, but he understands that they are separate requirements and must be treated as such.

*Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005); *Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, No. 5:16-CV-164, 2016 WL 7178731, at *6 (N.D. Ohio Dec. 9, 2016) ("The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are involved.") (citation omitted). The decision whether to grant a permanent injunction lies within the sound discretion of the Court. *Profusion Indus.*, 2016 WL 7178731, at *6. Additionally, relevant to the Latham Act claims, "[t]he Lanham Act provides that a court may grant an injunction 'according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office' or to prevent the violation of any common law trademark rights." *United Press Int'l, Inc. v. Glob. One News, Inc.*, No. 3:18-CV-00910, 2020 WL 2572483, at *4 (M.D. Tenn. May 21, 2020) (quoting 15 U.S.C. § 1116(a)).

"The law of this Circuit holds that no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757–58 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir.1999)). The Sixth Circuit has explained that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.* (quoting *Circuit City Stores*, 165 at 1056). *See Lifted Rsch. Grp., Inc. v. Behdad, Inc.*, 591 F. Supp. 2d 3, 8 (D.D.C. 2008) ("[T]he Court agrees that Defendant's continuing disregard for Plaintiff's rights demonstrates that Defendant will continue to infringe on Plaintiff's rights, absent an injunction. This finding alone entitles Plaintiff to a permanent injunction."). Irreparable harm ordinarily follows from infringement, and the Court has found that Defendant has infringed on Plaintiff's Marks, so the Court does not need to make a specific finding as to irreparable harm. Nevertheless, the Court can

easily say that under these circumstances the confusion between Defendant and Plaintiff's companies based off Defendant's liability-creating conduct creates irreparable harm, especially considering such facts as the misattributed Wage Claims and Defendant's negative reviews. *Cf. Basicomputer Corp v. Scott*, 973 F.2d 507 (6th Cir. 1992) (noting in the context of a breached non-compete agreement that "[t]he loss of customer goodwill and injuries that are a consequence of unfair competition are difficult to compute and certainly constitute irreparable harm").

As previously explained by this Court:

> Defendants face no hardship as a consequence of their compelled compliance with federal law. Nor do they face hardship in complying with their obligations under [a contract]. It is generally not a hardship to comply with lawful obligations, and Defendants here have not even tried to show such a hardship in this case. Plaintiff, on the other hand, will continue to suffer from damage to its reputation and goodwill if Defendants are not enjoined from its illegal conduct with respect to the [plaintiff's] trademarks and trade names.

*I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *6 (M.D. Tenn. Aug. 14, 2020) (citations omitted). So too here, Defendant will not face a hardship by being compelled to comply with federal and state law and the terms of the Purchase Agreement and License agreement, while in the absence of an injunction, Plaintiff would continue to suffer damage to its reputation and goodwill.

Additionally, it is in the public interest to enforce federal trademark law and to prevent consumers from being misled regarding the nature of the services purchased from Defendant. *I Love Juice Bar Franchising*, 2020 WL 4735031 at *6; *Chanel, Inc. v. Jermaine Wrice*, No. 5:13-CV-891, 2015 WL 521144, at *9 (N.D. Ohio Feb. 9, 2015); *see also Future Lawn, Inc. v. Maumee Bay Landscape Contractors*, L.L.C., 542 F. Supp. 2d 769, 781 (N.D. Ohio 2008) (it is "virtually axiomatic" that the public interest is served by enforcing the protections Congress has granted to owners of service marks) (citation omitted). The public further benefits here because the confusion

extends beyond consumers to employees, who should be able to readily identify who employs them. Moreover, Plaintiff has been inappropriately served with lawsuits related to employee wages for which it is not actually responsible, and it is in the public interest that lawsuits are efficiently brought against the correct parties so claims can be properly adjudicated.

The Court has little difficulty finding that these factors collectively weigh in favor of ordering permanent injunctive relief as requested. The question then arises as to what particular permanent injunctive relief the Court should order.

Federal Rule of Civil Procedure 65 requires that any injunction both be "specific in its terms" and "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).[26] And the Court is aware of the need to appropriately circumscribe (with adequate specificity) any injunctive provisions that are of the nature of merely requiring the defendant to comply with existing law; "obey-the-law" injunctions are disfavored, *Bazzy Invs. v. City of Dearborn*, No. 16-10879, 2018 WL 10962765, at *7 (E.D. Mich. Aug. 2, 2018) ("Courts have consistently held that an injunction that merely instructs a party to "obey the law" is disfavored.). But "there may be circumstances when obey-the-law injunctions are justified by the facts of the case in which the injunction is sought[,]" *id.* (citing *Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 412) (6th Cir. 2016)), and the Sixth Circuit has indicated the permissibility of injunctions that are limited "to the conduct 'which has been found to have been pursued or is related to the proven unlawful conduct.'" *Howe v. City of Akron*, 801 F.3d 718, 753

---

[26] Most parts of Rule 65 are related specifically to temporary restraining orders and preliminary injunctions, not permanent injunctions. But Rule 65(d), which is applicable to "every order granting an injunction," Fed. R. Civ. P. 65(s)(1)(A), does apply to permanent injunctions. *See, e.g., Pelzer v. Vassalle*, 655 F. App'x 352, 362 (6th Cir. 2016) ("A plaintiff seeking a permanent injunction must prove that he has suffered an irreparable injury, and a district court cannot issue such an injunction without providing its reasons, *see* Fed. R. Civ. P. 65(d)(1)(A)." (citation omitted)).

(6th Cir. 2015) (quoting *E.E.O.C. v. Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir.1994)); *see also Perez*, 655 F. App'x at 412. The Court will proceed accordingly.

That said, not all of the requested injunctive relief is supported. Before providing the terms of the injunctive relief, the Court will first address specific provisions that Plaintiff included in its prayer for relief that the Court deems inappropriate at this time.

First, in listing those who would be bound by the injunction, Plaintiff includes Defendant's "employees, agents, officers, *directors*, attorneys, *successors, affiliates, subsidiaries, and assigns*," but the emphasized groups extend beyond those specifically listed in Rule 65, which lists "the parties' officers, agents, servants, employees, and attorneys"). While the just-italicized groups in many cases surely would be among the "other persons who are in active concert or participation" that both Plaintiff and Rule 65 includes (and which the Court will include) and therefore would be covered by the injunction anyway, the Court will not *categorically* include such groups; instead, it will limit the language of the injunction to the groups of persons specifically listed under Rule 65—especially since nothing about Plaintiff's allegations suggests that directors, successors, affiliates, subsidiaries, and assigns are actually at play in this case. *See United Press Int'l, Inc. v. Glob. One News, Inc.*, No. 3:18-CV-00910, 2020 WL 2572483, at *5 (M.D. Tenn. May 21, 2020) ("Plaintiffs have not demonstrated that anyone outside of the Defendants—and their officers, agents, servants, employees, or attorneys—are 'in active concert or participation' with Defendants and the Court declines to enter an injunction that directly affects the rights of third parties."). Relatedly, Plaintiff asks the Court

> to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all good, advertisements, promotions, signs, displays, decals, branding, and other materials featuring or bearing Plaintiff's Marks, or any other

mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of [Plaintiff's Marks], and to immediately remove them from public access and view.

This language likewise asks the Court to effectively enjoin third parties, which the Court will not do at this juncture. Instead, the Court believes it is Defendant's responsibility to correct its actions by notifying these parties of this Court's decision so that they have actual notice of the Court's injunction order. The language in the injunction below has been modified (from Plaintiff's proposal) accordingly.

Second, Plaintiff asks that the Court direct Defendant to "formally abandon with prejudice" any application to register and "cancel with prejudice" any registration of the Infringing Marks and Combined Infringing Mark, or other marks infringing on Plaintiff's Marks. Plaintiff has not alleged that Defendant has attempted to register the Infringing Marks or Combined Infringing Mark as trademarks, but Plaintiff has alleged (and the court accepts as true) that Defendant has registered "Caliber Care+Transport" as a fictitious business name and has been doing business under that name. As this name is adopted from Plaintiff's Marks, it is part and parcel of Defendant's infringing use of Plaintiff's Marks, so the proposed injunction will therefore be revised to address the registration of the business name. Additionally, Plaintiff's proposed injunction describes objects bearing Plaintiff's Marks, including "goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and other materials." Plaintiff has not made allegations of Defendant's use of Plaintiff's Marks on specific objects like packaging and shopping bags. But Plaintiff has alleged (and the Court accepts as true) that Defendant was using the Infringing Marks and Combined Infringing Mark in the course of Defendant's business, and Plaintiff has provided evidence of Defendant's use of the Infringing Marks and Combined Infringing Mark on vehicles, and to advertise, promote, and brand Defendant's services. The Court will revise the proposed injunctive relief and enter an injunction that directs Defendant to deliver

and dispose of any infringing "good, advertisements, promotions, signs, displays, decals, branding, and other materials."

## PERMANENT INJUNCTION

For the reasons discussed above, the Court will grant (as will be formally reflected in a separate Injunction order) Plaintiff's request for permanent injunctive relief. The Injunction Order will include the following terms:

I.   Defendant, its officers, agents, servants, employees, and attorneys, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise ("Enjoined Persons") are enjoined from:

a.   manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise, or promote Defendant's goods or services bearing Plaintiff's Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Marks;

b.   engaging in any activity that infringes Plaintiff's rights in its Marks;

c.   engaging in any activity constituting unfair competition with Plaintiff;

d.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that:

i.   Defendant's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff; or

> ii. Plaintiff's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendant;

e. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Plaintiff's Marks or any other mark that infringes or is likely to be confused with Plaintiff's Marks, or any goods or services of Plaintiff, or Plaintiff as their source; and

g. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by any of the preceding paragraphs I(a)-(f).

II. Enjoined Persons additionally are enjoined from any manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all good, advertisements, promotions, signs, displays, decals, branding, and other materials that feature or bear any designation or mark incorporating Plaintiff's Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Marks, and notify all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale

Defendant's goods or services of this Court's order and that they are to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all good, advertisements, promotions, signs, displays, decals, branding, and other materials featuring or bearing Plaintiff's Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Marks, and that those items should be removed from public access and view.

III. Defendant shall recall and deliver up for destruction or other disposition all good, advertisements, promotions, signs, displays, decals, branding, and other materials bearing Plaintiff's Marks, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Marks, including those items used by parties in the preceding paragraph unless Defendant can demonstrate that those Parties have, of their own accord, destroyed or disposed of all such materials.

IV. Defendant shall formally abandon with prejudice any and all of its applications to register or Plaintiff's Marks, or any mark consisting of, incorporating, or containing Plaintiff's Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof as a fictitious business name.

V. Defendant shall cancel with prejudice any and all of its registrations for Plaintiff's Marks, or any mark consisting of, incorporating, or containing Plaintiff's Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof as a fictitious business name.

VI. Pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant shall file with the court and serve upon Plaintiff's counsel—within thirty (30) days after

service on Defendant of an injunction in this action, or such extended period as the Court may direct in the future—a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

## CONCLUSION

Plaintiff's Motion for Default Judgment (Doc. No. 17) is **GRANTED IN PART and DENIED IN PART**. Specifically, it is GRANTED as to the claims for federal trademark infringement pursuant to 15 U.S.C. §1114(1) (Count I), federal unfair competition pursuant to 15 U.S.C. §1125(a) (Count II), state breach of contract (Count IV), common law trademark infringement (Count VI), and common law unfair competition (Count VII), and DENIED as to the claims for federal trademark dilution pursuant 15 U.S.C. §1125(c) (Count III) and state trademark dilution (Count V).

Plaintiff will be awarded prejudgment interest and attorney's fees in addition to damages, all to be awarded in an amount still to be determined. To that end, Plaintiff is ORDERED to file additional briefing to substantiate an award of damages and prejudgment interest in a particular amount, whereafter the Court will determine whether to hold a hearing on damages. Pursuant to Rule 54(d)(2), upon proper motion by Plaintiff, the Court will take up the issue of determining the amount to award in attorney's fees following the entry of judgment. Defendant will be PERMANENTLY ENJOINED according to the terms above and which will be provided in an accompanying Injunction Order that will be entered contemporaneously herewith.

Finally, Plaintiff's Motion to Ascertain Status (Doc. No. 22) is DENIED as moot in light of the fact that the status of this case has effectively been provided herein even without a separate

discussion of "status" as such.

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE